945 So.2d 212 (2006)
STATE of Louisiana, Appellee
v.
Daniel MORRIS, Appellant.
No. 41,651-KA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
Louisiana Appellate Project, by Mary Constance Hanes, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and MOORE, JJ.
MOORE, J.
The defendant, Daniel Morris, was convicted of illegal possession of stolen things in a felony high-grade amount, and subsequently sentenced to one year at hard labor, suspended, with one year of active supervised probation with special conditions. The court denied defendant's post-verdict judgment of acquittal but modified the verdict to guilty of middle-grade possession of stolen property. The sentence remained the same. Defendant appealed. For the reasons set forth below, we reverse the conviction and sentence.

FACTS
Around 10:30 or 11:00 in the morning on April 28, 2002, Linzola Winzer walked outside *213 her home and noticed that her 1986 Chevy Caprice was missing. She reported the matter to the police.
Later the same day, Caddo Parish Sheriff's Deputy Steve Douglas was dispatched to a suspicious vehicle complaint on Moore Road. When he arrived at the scene, he saw a Honda Accord beside a Chevy Caprice in the middle of the street. The Caprice had an open hood. The defendant and another young man walked from the front of the Caprice to the Honda Accord. Deputy Douglas detained the two men until he could run a check on the license plate of the Caprice. After he learned the Caprice had been reported stolen, he patted the gentlemen down and found a pair of pliers on the defendant. Before the deputy could question him, however, the defendant fled the scene.
The sheriff's office contacted Ms. Winzer to tell her that the car had been found. The trunk had been forced open, the steering column had been broken, carpet had been ripped, and the CD player and other things had been removed. None of the missing items were ever recovered.
Two days later, the defendant went to the police substation. He told Deputy Douglas that he saw his friend's car parked on the side of the road and decided to check on it. He did not name the friend. Dy. Douglas informed Morris that the officer had spoken to the owner of the vehicle and that the owner did not know him. Morris then changed his story and said that the other young man with him, Jeremy Hanson, knew the vehicle's owner. Hanson never confirmed knowing the owner of the vehicle. Defendant told Dy. Douglas that he ran from him because he knew there was a bench warrant out on him from Red River Parish. Dy. Douglas verified that the bench warrant existed for failure to appear for DUS, passing in a no-passing lane, and illegal possession of stolen property. Defendant was subsequently charged with possession of stolen things valued between $300 and $500 in violation of La. R.S. 14:69.
Ms. Winzer testified at the trial that she did not know the defendant, Daniel Morris, and she stated that she had never given Morris permission to touch the vehicle, work on the vehicle, or be around the vehicle.
After Morris waived a jury trial and proceeded to a bench trial, the court found him guilty of illegal possession of stolen things "in a felony high-grade amount." The court then sentenced defendant to one year at hard labor, suspended, with one year of active supervised probation with special conditions; Morris was given credit for time served.
Morris filed a Motion for Post-Verdict Judgment of Acquittal and/or a Modification of the Judgment, asserting that the bill of information charged him with middle-grade illegal possession of stolen things, but that he was found guilty of high-grade illegal possession of stolen things. The trial court granted the motion in part, modifying the judgment to reflect middle-grade illegal possession of things, but keeping the sentence the same; the trial court denied the motion with respect to acquittal. Additionally, a forgery charge was dismissed along with two misdemeanor charges. Morris requested and was granted an appeal. For the reasons below, we reverse the conviction and sentence.

DISCUSSION
On appeal, defendant raises the single issue of whether the evidence was sufficient to support Daniel Morris' conviction for possession of a stolen vehicle. He argues that the evidence presented proves that Morris did nothing more than stop to *214 look at a car which was parked in the middle of the street. Morris was not found in possession of any of the numerous items that had been taken from the car, nor were these items recovered from the other vehicle that was at the scene. The defense further argues that from Ms. Winzer's testimony, it can be deduced that the person or persons who damaged and stole parts from the vehicle had already left the scene before Dy. Douglas saw Morris looking at the vehicle. According to the defense, the state failed to prove the element of possession by excluding every reasonable hypothesis of innocence.
The state contends the element of possession was proven through constructive possession. Morris was found looking under the hood of the stolen car, pliers were found on Morris' person, and Morris ran from the deputy after the pliers were discovered. The state cites three cases, discussed below, for the proposition that the evidence presented against Morris was legally sufficient to prove every element of the offense of illegal possession of stolen things.
The pertinent provisions of La. R.S. 14:69 state:
A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
B.(2) When the value of the stolen things is three hundred dollars or more, but less than five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than $2,000.00 or both.
The constitutional standard for testing sufficiency of the evidence is enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); that standard requires a conviction to be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). When circumstantial evidence is used to prove the commission of an offense, the provisions of La. R.S. 15:438 mandate that, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence must be excluded in order to convict. The provisions of La. R.S. 15:438 do not establish a separate standard from the Jackson standard, but rather provide a helpful methodology for determining the existence of reasonable doubt; ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, supra.
There are four essential elements for the crime of possession of a stolen thing: (1) the item was stolen; (2) the item was of value; (3) the defendant knew or should have known that the property was stolen; and (4) the defendant intentionally possessed, procured, received, or concealed the property. State v. Walker, 350 So.2d 176 (La.1977). Illegal possession of stolen property is a general intent crime. State v. Bounds, 38,330 (La.App. 2 Cir. 5/12/04), 873 So.2d 901.
The prosecution does not need to prove actual possession in order to obtain a conviction. Instead, a conviction may be supported by a showing of constructive possession. Such possession exists when the item is within the defendant's dominion *215 or control. State v. Skipper, 527 So.2d 1171 (La.App. 3 Cir.1988); State v. Mercadel, 503 So.2d 608 (La.App. 4 Cir.1987).
In the instant case, the first two essential elements of illegal possession are satisfied. There is no question that the item was stolen, and appellant is not contesting the value of the item. The appellant is not challenging that he knew or should have known that the property was stolen. After all, the vehicle was sitting in a public road and obviously had been stripped. Thus, the question is whether the defendant intentionally possessed the stolen vehicle. Because the crime at issue is a general intent crime, Morris must have at least adverted to the prescribed criminal consequences as reasonably certain to result from his actions. Viewing the evidence in the light most favorable to the prosecution, Morris must have turned his attention to criminal consequences as reasonably certain to result from his standing in front of the stripped vehicle and looking under its hood while having a pair of pliers in his pocket. After review of the evidence in this case, we conclude that the state did not prove its case because the state did not prove intentional possession beyond a reasonable doubt even when the evidence is viewed in the light most favorable to the prosecution.
The state cites three cases in support of a finding that the defendant had constructive possession of the vehicle. These cases are not persuasive.
In State v. Ferrand, XXXX-XXXX (La.App. 4 Cir. 1/14/04), 866 So.2d 322, a patrolling officer noticed a parked truck with its windshield wipers on and its engine running. The driver's side door was ajar, and as the officer turned into a nearby driveway, she saw the defendant's head "pop up" over the truck. As the officer began to turn, the defendant walked away from the truck. The officer detained him and conducted an interview; she was suspicious because no one was usually out at that time of the morning in the little strip mall where the defendant was parked. When the officer looked into the truck, she saw the steering column had been broken, and when she checked on the vehicle, she learned it had been stolen. The defendant told the officer that another man had been at the scene and left; the defendant also told the officer that he was a mechanic and had driven the truck there to make repairs on the car parked next to the truck.
Ferrand is distinguishable on its facts. The defendant was standing in the open door of the driver's side of the truck with the windshield wipers and engine running; the vehicle's steering column was broken, and the defendant began to walk away as the officer approached. No one else was seen in the vicinity.
By contrast, the Caprice in the instant case was not running and the doors were closed. Although the hood was up on the vehicle, the testimony from Dy. Douglas is far from conclusive regarding whether the defendant was under the hood of the vehicle. He testified that when he arrived at the location he observed the following:
When I got there, when I rounded the corner, I saw two vehicles sitting in the middle of the street. And the closer I got, I saw two young men coming away from the vehicle. I detained them until I could find out what was going on, ran the plates to the car. The car eventually came back stolen. I patted the gentlemen down, handcuffed them for my protection. One of them didn't give me any problems, he stayed right there. The other one took off running, Mr. Morris.
The vehicle the two young men were coming away from was the stolen Chevy Caprice; the other car present was a Honda Accord. Dy. Douglas did not see the *216 young men in actual possession of the vehicle. He said the two men were "near the hood of the Chevy Caprice." When asked if he ever saw them inside the hood he responded: "Yes. They were coming from the hood when I drove up." However, when asked if he saw them underneath the hood or saw them coming "from that direction," he responded: "Coming from that direction."
In State v. Brooks, XXXX-XXXX (La.App. 5 Cir. 2/26/02), 811 So.2d 1066, two police officers were investigating a parking lot in Kenner where several stolen vehicles had recently been recovered. As the officers approached a Chevy Blazer in the parking lot, they saw a man exit the driver's side and walk toward the courtyard area between the apartment buildings. After running a computer check of the license plates, they determined that the vehicle was reported stolen the previous day. They detained the man, read him his rights, and told him that the vehicle had been reported stolen. The defendant indicated that he was going home, but he lived more than three miles away from the apartment complex. When asked why he was walking instead of driving the car if he was going home, the defendant did not respond. The steering column in the vehicle had been "defeated" so that it could be started with a screwdriver, the radio had been removed from the dashboard and the latch on the glove compartment had been destroyed causing the glove compartment to hang open.
Brooks, like Ferrand, has much stronger facts. In Brooks, the facts indicate that the defendant actually stole the vehicle. He was observed inside the vehicle which had its steering column broken so that it could be started without a key. Furthermore, the defendant gave an implausible story concerning the vehicle and had no explanation as to how he had arrived in Kenner when he lived several miles away in St. Rose. There is a much stronger showing of possession in Brooks than in the instant case.
Finally, in State v. Mercadel, 503 So.2d 608 (La.App. 4 Cir.1987). officers investigated a complaint of someone stripping a car. As they approached a vacant house, they noticed a car backed into the driveway with its trunk lid raised. As the officers approached the car, they noticed a man look out from behind the trunk lid and then duck down out of sight. The man fled carrying various items in his hands. After being apprehended, officers retrieved a pair of pliers, a ring of keys, and a car stereo speaker. A computer check verified the car had been stolen and the defendant subsequently was convicted of illegal possession of stolen things with a value of over $500.00. This case is easily distinguishable from our facts because the defendant was actually in possession of items from the car when he was spotted by the officers. The car stereo speaker was one that the owner testified that had been installed in the trunk, and the ring of keys included keys to the car that was stolen. In the instant case, although the vehicle had been stripped, defendant was not in possession of any items from the vehicle. The only indication that he was probably up to no good was the fact that he had a pair of pliers in his pocket.
We conclude that the state's evidence, even when viewed in the most favorable light, does not show that the defendant had dominion and control over the vehicle so as to constitute constructive possession. Such possession requires more than standing near the vehicle. See, e.g. State v. Lampton, 1997-2616 (La.App. 4 Cir. 3/10/99), 729 So.2d 754; State v. Howkins, 516 So.2d 188 (La.App. 4 Cir.1987). Although Morris was in close proximity to the vehicle, there is no evidence that he *217 took any step to remove any items from the vehicle.
While it is plausible that Morris's running away is indicative of criminal intent, he had a good reason for running because there was a warrant for his arrest in Red River Parish, Louisiana. Thus, while flight and attempt to avoid apprehension are circumstances from which a trier of fact ordinarily may infer a guilty conscience, that inference has much less weight in the instant case due to the outstanding warrant.

CONCLUSION
Hence, after reviewing the evidence under the prescribed sufficiency standard, we conclude that the state did not meet its burden of showing that the defendant had possession or constructive possession of the stolen Caprice. For this reason, the defendant's conviction and sentence are reversed.
CONVICTION AND SENTENCE REVERSED.